# United States District Court
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| DR. ERIC J. HALL, JR., DDS, PA and DR. ERIC J. HALL, JR., DDS, § § § § § § § § § § | | |
| *Plaintiff*, | § | Civil Action No. 4:19-cv-00335 |
| | § | Judge Mazzant |
| v. | § | |
| | § | |
| AFFORDABLE CARE, LLC f/k/a AFFORDABLE CARE, INC., | § § | |
| *Defendant*. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are Defendant's Motion to Compel Arbitration and Motion to Stay Pending the Outcome of the Arbitration ("Motion to Compel") (Dkt. #9) and Defendant's Opposed Motion to Stay Discovery ("Motion to Stay Discovery") (Dkt. #17).

Having considered the motions, the Court finds that Defendant's Motion to Compel should be **GRANTED** and its Motion to Stay Discovery should be **DENIED as moot**.

## BACKGROUND

### I. Factual Summary

Plaintiff Eric J. Hall, Jr., DDS ("Dr. Hall") is a dentist licensed to practice dentistry in Texas. Plaintiff Dr. Eric J. Hall Jr., DDS, PA ("the PC," and together with Dr. Hall, "Plaintiffs") is Dr. Hall's professional association.

Defendant Affordable Care, LLC f/k/a Affordable Care, Inc. ("ACI" or "Defendant") is not licensed to practice dentistry but provides administrative and business support services to dental practices across the country, including several dental practices in Texas.

In 2015, ACI allegedly solicited Dr. Hall and proposed to provide certain services for the PC. In particular, ACI allegedly promised to provide the PC with the following: (1) financial and

accounting management; (2) human resources and benefits administration; (3) marketing and patient services; (4) recruitment and staffing; (5) centralized purchasing contracting; (6) education and training; (7) information technology; (8) operations support; and (9) real estate and facility management. Under this Services Contract, Dr. Hall would retain full control over all operational aspects of his dental practice. The Services Contract contains a mandatory arbitration clause that provides as follows:

> Any controversy or dispute between ACI and the PC or the Practice Owner with respect to the application or interpretation of the terms of this Agreement, except claims by ACI for failure of the PC to pay ACI or its affiliate or the exercise of ACI's rights of eviction or equitable remedies, will, upon the request or demand of either party, be resolved exclusively by arbitration in Raleigh, North Carolina in accordance with the then-existing rules of the American Arbitration Association applicable to commercial arbitration. THE PARTIES IRREVOCABLY AND VOLUNTARILY WAIVE ANY RIGHT THEY MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY DISPUTE RELATING TO OR ARISING OUT OF THIS AGREEMENT.

(Dkt. #8-1).

On April 12, 2019, Plaintiffs' attorney sent a letter to ACI alleging the following:

> ACI has breached the [Services] Contract by, among other things: (1) withholding compensation owed to Dr. Hall under the Contract; (2) charging unauthorized expenses to the PC; (3) charging the PC inflated and unauthorized "fees"; and (4) interfering with the administration of Dr. Hall's practice.

(Dkt. #9-5). In that letter, Plaintiffs demanded settlement or they would initiate legal action by April 26, 2019. On April 18, 2019, ACI provided Plaintiffs with 90 days' notice of its intent to terminate its relationship with Plaintiffs without cause pursuant to the Services Contract. On April 19, 2019, ACI filed a demand for arbitration with the American Arbitration Association. In response, Plaintiffs answered the arbitration demand and asserted counterclaims arising out of the Services Contract, including a claim for breach of the Services Contract. Specifically, Plaintiffs asserted counterclaims of breach of contract, exemplary damages, and attorneys' fees and

2

indemnification. Plaintiffs then filed this lawsuit on May 7, 2019, asserting tortious interference and fraudulent inducement claims, which are based on substantially the same facts as those giving rise to Plaintiffs' claims currently in arbitration. That arbitration is pending in Raleigh, North Carolina, styled as *Affordable Care, LLC v. Eric Hall, Jr., DDS and Eric Hall, Jr., DDS, PA*, AAA Case No. 01-19-0001-2194.

*Tortious Interference*

Dr. Hall is employed by the PC pursuant to an Employment Agreement that entitles him to a minimum $150,000 annual salary. ACI processes Dr. Hall's paychecks, and it has authority to withdraw funds from the PC's operating account. ACI exercises that authority by conducting a daily sweep of all funds from the PC's operating account. ACI then pays Dr. Hall using funds drawn from a separate account controlled by ACI.

Since March 2019, ACI has allegedly failed and refused to process any salary payments owed to Dr. Hall. Plaintiffs claim that ACI continues to conduct daily sweeps of all funds from the PC's operating account and then deposits the PC's revenue into ACI's separate account, depriving the PC of its money and preventing the PC from fully and fairly compensating Dr. Hall. Consequently, Plaintiffs claim, ACI is causing the PC to be in breach of its obligation to pay Dr. Hall's salary under the Employment Agreement.

*Fraudulent Inducement*

In addition to the foregoing allegations, Plaintiffs also claim that ACI falsely represented or omitted facts that it had the duty to disclose. Plaintiffs contend that ACI made fraudulent representations and omissions to induce Plaintiffs to enter into the Services Contract, Branding Guidelines, and Facility Lease. Once the contracts were in place, Plaintiffs argue, ACI continued

to defraud Plaintiffs by calculating its "fees" and "expenses" based on materially false and misleading financial statements.

## II. Procedural History

On June 28, 2019, Defendant filed a Motion to Compel Arbitration and Motion to Stay Pending the Outcome of the Arbitration (Dkt. #9). On July 18, 2019, Plaintiffs filed a Response (Dkt. #11). On July 26, 2019, Defendant filed a Reply (Dkt. #14).

On August 22, 2019, Defendant filed an Opposed Motion to Stay Discovery (Dkt. #17). On August 23, 2019, Plaintiffs filed a Response (Dkt. #18). On August 30, 2019, Defendant filed a Reply (Dkt. #20).

### LEGAL STANDARD

"The Federal Arbitration Act ("FAA") expresses a strong national policy favoring arbitration of disputes, and all doubts concerning the arbitrability of claims should be resolved in favor of arbitration." *Wash. Mut. Fin. Group, LLC v. Bailey*, 364 F.3d 260, 263 (5th Cir. 2004). The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

When considering a motion to compel arbitration, the Court must address two questions. *Graves v. BP America, Inc.*, 568 F.3d 221, 222 (5th Cir. 2009) (citing *Fleetwood Enterprises Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002)). "First, whether there is a valid agreement to arbitrate, and second, whether the dispute in question falls within the scope of the arbitration agreement." *Id.* Concerning the first question of contract validity, the Court should apply "ordinary state-law principles that govern the formation of contracts." *Id.* (citing *First Options of*

*Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). The second question of scope is answered "by applying the 'federal substantive law of arbitrability . . . .'" *Id.* (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985)).

## ANALYSIS

Defendant moves the Court to compel arbitration of Plaintiffs' fraudulent inducement and tortious interference claims. Plaintiffs oppose Defendant's motion on the ground that their claims do not involve "the application or interpretation of" the terms of the Services Contract, Facility Lease, or Branding Guidelines and thus are outside the scope of the arbitration provision.

The Services Contract was executed in Texas but contains a choice of law clause providing that "[t]he validity, interpretation, and performance of this Agreement shall be governed by and construed in accordance with the laws of Delaware." (Dkt. #8-1). "A federal court is required to follow the choice of law rules of the state in which it sits." *Resolution Tr. Corp. v. Northpark Joint Venture*, 958 F.2d 1313, 1318 (5th Cir. 1992) (citing *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). "Under the Texas rules, in those contract cases in which the parties have agreed to an enforceable choice of law clause, the law of the chosen state must be applied." *Id.* (citing *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 678 (Tex. 1990)). Neither party disputes that the Services Contract or choice of law clause is enforceable; thus, Texas choice of law rules apply, and Delaware law supplies the elements of each of Plaintiffs' causes of action. Without more, however, the parties' choice of law provision in this case does not express their intent to depart from the FAA's default rules. The Court will accordingly look to the federal substantive law of arbitrability to determine the scope of the arbitration clause.

## I. Fraudulent Inducement

In Delaware, to prove a claim of fraud or fraudulent inducement, the plaintiff must establish the following: (1) a false representation of material fact; (2) the defendant's knowledge of or belief as to the falsity of the representation or the defendant's reckless indifference to the truth of the representation; (3) the defendant's intent to induce the plaintiff to act or refrain from acting; (4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and (5) damage to the plaintiff as a result of such reliance." *Duffield Assocs., Inc. v. Meridian Architects & Eng'rs, LLC*, 2010 WL 2802409, at *4 (Del. Super. Ct. July 12, 2010).

ACI argues that fraudulent inducement allegations are a matter for the arbitrator, not the Court, to decide. Specifically, ACI argues that while allegations of fraudulent inducement as to the arbitration clause itself are for the district court to decide, an allegation of fraudulent inducement as to the contract as a whole is a decision for the arbitrator. *Jureczki v. Banc One Texas, N.A.*, 252 F. Supp. 2d 368, 379 (S.D. Tex. 2003) ("While fraud in the inducement of an arbitration agreement is a matter for the trial court, fraud in the inducement of an entire contract is a matter for the arbitrator to decide."); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04 (1967).

Dr. Hall argues that *Jureczki* and *Prima Paint* are distinguishable from this case. Specifically, Dr. Hall maintains that *Jureczki* and *Prima Paint* involved agreements with arbitration provisions containing broader language than the terms in the arbitration clause in the Services Contract. The arbitration provision in the agreement in *Jureczki* required arbitration of all claims "arising from or relating in any way to this Agreement." *Jureczki*, 252 F. Supp. 2d at 375. The arbitration provision in the agreement in *Prima Paint* required arbitration of "[a]ny controversy or claim arising out of or relating to this Agreement, or the breach thereof." *Prima*

*Paint*, 388 U.S. at 398. In comparison, the arbitration clause at issue here requires arbitration of "[a]ny controversy or dispute . . . with respect to the application or interpretation of the terms of this Agreement." (Dkt. #8-1). Dr. Hall claims this language is much narrower than the language in the arbitration provisions in *Jureczki* and *Prima Paint*.

As ACI observed, the Supreme Court has held that the FAA requires claims of fraudulent inducement as to the contract as a whole to be arbitrated. *Prima Paint*, 388 U.S. at 403–04. Specifically, the *Prima Paint* Court held that the determination as to whether there was fraudulent inducement as to the contract as a whole is for the arbitrator *where there is otherwise no evidence that the contracting parties intended to withhold that issue from arbitration*. *Id.* at 403–06. In other words, the contractual language must be broad enough to encompass a fraudulent inducement claim before arbitration of that claim is proper. Thus, the Court turns to the question whether the arbitration provision is broad enough to encompass Plaintiffs' fraudulent inducement claim.

"Determining whether a dispute falls within the scope of an arbitration provision requires the Court to characterize the arbitration clause as broad or narrow." *Hornbeck Offshore Corp. v. Coastal Carriers Corp.*, 981 F.2d 752, 754 (5th Cir.1993). In making this determination, "ambiguities as to the scope of the arbitration clause itself [are] resolved in favor of arbitration." *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 476 (1989); *see also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 945 (1995) (quoting *Moses H. Cone Mem'l Hosp*, 460 U.S. at 24–25 (1983) ("[D]oubts concerning the scope of arbitral issues should be resolved in favor of arbitration."). Thus, there is a presumption of arbitrability "in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *AT&T Technologies, Inc. v. Communications Workers of Am.*, 475

7

U.S. 643, 650 (1986) (quoting *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83 (1960)).

In the Fifth Circuit, "courts distinguish 'narrow' arbitration clauses that only require arbitration of disputes 'arising out of' the contract from broad arbitration clauses governing disputes that 'relate to' or 'are connected with' the contract." *Pennzoil Expl. & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998). "[A]rbitration clauses covering 'any dispute' related to an agreement . . . have been interpreted to be broad arbitration clauses." *Innerwireless, Inc. v. Johnson Controls, Inc.*, No. 3:07-cv-312, 2007 WL 2428591, at *2 (N.D. Tex. Aug. 27, 2007) (citing *Ford v. Ables*, 207 Fed. App'x. 443, 447 (5th Cir. 2006) (holding that an arbitration provision requiring arbitration of "any Claim related to" the agreement was broad)); *see also Mar-Len of Louisiana, Inc. v. Parsons-Gilbane*, 773 F.2d 633, 636 (5th Cir. 1985) (holding that an arbitration clause covering any dispute "with respect to the interpretation or performance" of the contract was broad). When construing narrow arbitration agreements, the Fifth Circuit's inquiry "is guided by the factual allegations underlying" the claims. *FCI USA v. Tyco Elecs. Corp.*, No. 2:06-cv-128, 2006 WL 2037557, at *2 (E.D. Tex. July 18, 2006) (quoting *Harvey v. Joyce*, 199 F.3d 790, 795 (5th Cir. 2000)). The Fifth Circuit determines whether tort claims are covered by an arbitration provision by asking whether the tort is "so interwoven with the contract that it could not stand alone." *Ford*, 141 F.3d at 250. Notwithstanding these general rules, "any comparison between a broad [versus] narrow arbitration clause may be a distinction without a difference when determining whether fraudulent inducement claims are arbitrable." *Minute Med Clinic Grp., LLC v. Absolute MD, LLC*, No. 6:17-cv-0025, 2017 WL 1885808, at *6 (W.D. La. Apr. 13, 2017), *report and recommendation adopted*, No. CV 17-00025, 2017 WL 1901600 (W.D. La. May 8, 2017).

The Court finds the opinion in *Sims v. Gay* instructive. There, the agreement in question contained an arbitration provision that covered "any dispute with regard to the interpretation or performance of [the agreement] or any of its provisions." *Sims v. Gay*, No. 4:09-cv-372, 2010 WL 1076064, at *2 (E.D. Tex. Feb. 26, 2010), *report and recommendation adopted sub nom.*, *Doris Sims & Succession Builders, LLC v. Gay*, No. 4:09-cv-372, 2010 WL 1062951 (E.D. Tex. Mar. 23, 2010). In interpreting the scope of the arbitration provision, the court determined first that the clause was narrow because it was "limited to 'any dispute' relating to the [agreement] specifically." *Id.* The court then held that the plaintiff's fraudulent inducement cause of action fell "clearly within the scope of the arbitration agreement" because it dealt with the interpretation or performance of the agreement. *Id.* at *3; *see also FCI USA*, 2006 WL 2037557, at *1–2 (holding that plaintiff's misappropriation of trade secrets tort claim fell within the arbitration clause requiring arbitration of disputes "aris[ing] with respect to a matter involving a term of this Agreement" because the claim involved a term of the contract and was "so interwoven with the contract that [it could] not stand alone").

Here, the language of the arbitration provision is susceptible to either a broad or narrow construction. *Compare Sims*, 2010 WL 1076064, at *2, *with Mar-Len of Louisiana, Inc.*, 773 F.2d at 636. However, the Court need not decide the issue because the arbitration clause would encompass Plaintiffs' fraudulent inducement claim regardless of whether the Court characterized it as broad or narrow. As illustrated in *Sims*, the arbitration provision is at least broad *enough* to encompass Plaintiffs' fraudulent inducement claim.

According to Plaintiffs' allegations, ACI falsely represented and omitted facts and made fraudulent misrepresentations and omissions in order to induce Plaintiffs to enter the Services Contract. Determining whether the terms of the Services Contract accurately and completely

9

reflect the parties' bargain and have been correctly applied throughout the engagement between Plaintiffs and ACI will require interpretation of the Services Contract's terms. Without determining whether the arbitration clause is "broad" or "narrow" under the Fifth Circuit's standard, the Court finds that under either construction, it cannot "be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers" Plaintiffs' fraudulent inducement claim. *See First Options of Chi.*, 514 U.S. at 945.

Thus, the Court finds that Plaintiffs' fraudulent inducement claim falls within the scope of the arbitration provision. The arbitration provision in the Services Contract (§ VI.D) requires arbitration of any dispute involving the "application or interpretation" of the Services Contract's terms. Because proving fraudulent inducement will involve "the application or interpretation" of the Services Contract's terms,[1] Plaintiffs' fraudulent inducement claim should be arbitrated.

## II.     Tortious Interference

In Delaware, to prove a claim of tortious interference with a contract, the plaintiff must establish the following: "(1) a contract, (2) about which defendant knew, and (3) an intentional act that is a significant factor in causing the breach of such contract, (4) without justification, (5) which causes injury." *Bhole, Inc. v. Shore Investments, Inc.*, 67 A.3d 444, 453 (Del. 2013) (quoting *Irwin & Leighton, Inc. v. W.M. Anderson Co.*, 532 A.2d 983, 992 (Del. Ch. 1987)).

Like Plaintiffs' fraudulent inducement claim, Plaintiffs' tortious interference claim falls within the scope of the arbitration clause. Dr. Hall claims that ACI has failed and refused to process any salary payments owed him, yet ACI continues to daily sweep all funds from the PC's

---

[1] The Court notes that Dr. Hall also claims that ACI fraudulently induced him to enter the Facility Lease and Branding Guidelines (Dkt. #8-2). Each contains an arbitration provision that is virtually identical to that in the Services Contract. Specifically, the Facility Lease contains its own arbitration provision, and the Branding Guidelines contains a provision (¶ 8) fully incorporating § VI of the Services Contract, which contains the arbitration provision at issue. The Court's reasoning as set forth in this Order applies equally to the Facility Lease and Branding Guidelines as it does to the Services Contract.

operating account. ACI derives its authority to process Dr. Hall's paychecks and conduct the sweeps from the terms of the Services Contract. And the determination whether ACI has exercised that authority properly, and in a way that does not interfere with the proper carrying out of the terms of the Employment Agreement, depends on the terms of the Services Contract. In other words, whether ACI has acted properly pursuant to its authority under the Services Contract almost *certainly* requires interpreting the provisions in the Services Contract that confer that authority to ACI. *See Sharifi v. AAMCO Transmissions, Inc.*, No. 3:07-cv-0718-D, 2007 WL 1944371, at *4 (N.D. Tex. June 28, 2007) (holding that tortious interference claim was arbitrable because the action could not be maintained without reference to the contract); *Sharju Ltd. P'ship v. Choice Hotels Int'l, Inc.*, No. 3:01-cv-2605-X, 2002 WL 107171, at *2 (N.D. Tex. Jan. 22, 2002) (holding that tortious interference claim was arbitrable because the success of the claim depended on whether the parties complied with the terms of the agreement in question and the allegations were so interwoven with the agreement's provisions that the claim could not be maintained without reference to the agreement); *see also Chevron Nigeria Ltd. v. Contract Operators, Inc.*, No. 1:09-cv-821, 2010 WL 1686757, at *4 (E.D. Tex. Apr. 26, 2010) (holding that arbitration clause requiring arbitration of "any controversy arising out of this Contract or the performance of the Services" encompassed a claim of tortious interference); *Innerwireless*, 2007 WL 2428591, at *5 (referring tortious interference claim to arbitration because it bore a significant relationship to the underlying agreement).

Thus, the claim of tortious interference with the Employment Agreement falls within the scope of the arbitration provision. The success of Plaintiffs' tortious interference claim depends on whether ACI properly exercised its authority under the Services Contract, and determining this is not possible without reference to and interpretation of the Services Contract's terms. Because

11

the arbitration provision in the Services Contract (§ VI.D) requires arbitration of any dispute involving the "application or interpretation" of the Services Contract's terms, Plaintiffs' tortious interference claim should be arbitrated.

## CONCLUSION

For the foregoing reasons, it is **ORDERED** that Defendant's Motion to Compel Arbitration and Motion to Stay Pending the Outcome of the Arbitration (Dkt. #9) is **GRANTED** and Defendant's Opposed Motion to Stay Discovery (Dkt. #17) is **DENIED as moot**.

It is further **ORDERED** that this action is stayed pending the outcome of arbitration.

**IT IS SO ORDERED.**

SIGNED this 28th day of October, 2019.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE